# IN THE SUPREME COURT OF TEXAS

═══════════

No. 20-0290

═══════════

AEROTEK, INC., PETITIONER,

v.

LERONE BOYD, MICHAEL MARSHALL, JIMMY ALLEN, AND TROJUAN CORNETT,
RESPONDENTS

═══════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

═══════════

JUSTICE BOYD, dissenting.

No doubt, "the times they are a-changin'."[1] But this case was decided ninety years ago when Mrs. Mary Weaver testified that she never signed a deed purportedly conveying her property to Mrs. Francelene Ida Ward. *See Ward v. Weaver*, 34 S.W.2d 1093, 1094 (Tex. Comm'n App. 1931, judgm't affirmed). The deed appeared to be properly signed by Mrs. Weaver, bore a notary's certificate of acknowledgement "in regular statutory form," met all other requirements for establishing an enforceable conveyance, and was filed in the county records. *Id.* But Mrs. Weaver swore under oath that neither she nor anyone authorized to act on her behalf had ever signed the deed. *Id.* To counter her denial, Mrs. Ward brought the notary to court, and he testified that he went to Mrs. Weaver's home and personally watched her place her signature on the deed, just as

_____

[1] BOB DYLAN, *The Times They Are A-Changin'*, *on* THE TIMES THEY ARE A-CHANGIN' (Columbia Records 1964).

he confirmed in the notary's certificate. *Id.* Mrs. Weaver swore, however, that the notary had never been in her home and she never signed the deed before him. *Id.* Despite the evidence of the recorded deed and the notary's testimony, the Commission of Appeals agreed that Mrs. Weaver's sworn denial created a fact issue that justified submission of the dispute to the jury and supported the jury's finding in Mrs. Weaver's favor. *Id.* at 1095. This Court agreed as well. *See id.*

Now, "back to the future."[2] When a party denies the existence of an enforceable arbitration agreement, the trial court "shall summarily determine that issue," TEX. CIV. PRAC. & REM. CODE § 171.021(b), by relying on "affidavits, pleadings, the results of discovery, and the stipulations of the parties," *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992). But if these sources create a material fact issue, the trial court must conduct an evidentiary hearing. *Id.* In this case, four Aerotek employees created a material fact issue by submitting sworn declarations asserting that they never saw or signed Aerotek's arbitration agreement during their electronic-onboarding process. After conducting an evidentiary hearing, the trial court believed the employees and denied Aerotek's motion to compel arbitration.

Aerotek's evidence that the employees saw and signed the arbitration agreement was quite compelling. In addition to printed copies of the agreement bearing what appear to be computer-generated stamps recording the dates and times at which each employee electronically signed it, Aerotek's program manager testified in great detail regarding the electronic-onboarding process. As the Court describes, *see ante* at ___, the program manager's testimony effectively established that, because of the way the process was designed and operated, it was physically and

---

[2] BACK TO THE FUTURE (Universal Pictures 1985).

technologically impossible for the employees to be hired without having electronically signed the arbitration agreement.[3]

And yet, like Mrs. Weaver, the employees swore under oath that they never saw or signed the agreement. Their sworn declarations were not, as the Court suggests, "mere argument," *ante* at \_\_\_, or "simple denials," *ante* at \_\_\_. Among other things, the employees swore that:

- They never saw the arbitration agreement until after suit was filed;
- They "did not sign any document, electronically or otherwise, providing [their] agreement to arbitrate claims against Aerotek or any of its customers;"
- They were "not presented with" any such document;
- They were "never told, verbally or in writing," and were "never presented with any document, electronic or otherwise, that stated" that they were "consenting, would be consenting, would be required to consent, or had consented, to arbitrate any claims against Aerotek or any of its customers;"
- They were "never told anything about arbitration, and no one from Aerotek or any other Defendant ever mentioned arbitration to [them] before this lawsuit was filed;"
- They were "never presented with any document, electronically or otherwise, that mentioned arbitration;"
- None of the documents they "reviewed and agreed to online mentioned arbitration;" and
- The printed copies of the arbitration agreements Aerotek produced were "not one of the terms, conditions, policies and/or procedures of Aerotek that [they] reviewed and agreed to online."[4]

---

[3] One of the employees asserted in his affidavit that he "was not computer savvy," and an Aerotek administrative assistant "went through and signed all [his] paperwork electronically while [he] sat with her." That administrative assistant also testified at the hearing, explaining that—although she could not remember this specific employee—if she helped him complete the electronic-onboarding process as he claims, he too could not have completed the process without electronically signing the arbitration agreement.

[4] The fourth employee also swore that the administrative assistant never "mention[ed] an arbitration agreement as she went through and signed documents electronically for [him]."

To put things bluntly, someone here testified under oath to facts that cannot be true. Either the employees were wrong (or lying) when they denied that they ever saw or signed the arbitration agreement, or Aerotek's program manager was wrong (or lying) when she described how the electronic-onboarding process works.

Under our well-established standard of review, this Court's assessment of the truth is irrelevant. By denying Aerotek's motion to compel arbitration, the trial court impliedly found that the employees did not knowingly sign the arbitration agreement. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992) (explaining that, when findings of fact are not requested or filed, all findings necessary to support a ruling are implied). Although the existence of a valid arbitration agreement is a legal question that we review de novo, *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006); *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003), we must "defer to the trial court's factual determinations if they are supported by evidence," *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009).

The Court concludes that the employees' sworn declarations are legally insufficient to constitute evidence supporting the trial court's implied finding. *Ante* at ___. It reaches this conclusion not because the declarations are conclusory, internally inconsistent, or otherwise inadequate or incompetent on their face. To the contrary, they are clear, direct, and as thorough and specific as they could be if—as the employees swear—they never saw, received, heard about, reviewed, or signed the arbitration agreement. In the absence of such sworn denials, the trial court would be required to accept the agreements "as fully proved." TEX. R. CIV. P. 93(7). But the sworn

4

denials, on their face, constitute legally sufficient evidence that the employees did not sign the agreement.

Nevertheless, the Court holds that, *in light of Aerotek's evidence regarding the electronic-onboarding process*, the sworn denials constitute "no evidence" to support the trial court's finding. *Ante* at ___. Although the Court finds no inadequacies in the sworn declarations themselves, the Court weighs that evidence against evidence regarding Aerotek's electronic-onboarding process and decides that "reasonable people could not differ in concluding that the Employees could not have completed their hiring applications as they did without signing their" arbitration agreements. *Ante* at ___. In short, because the Court believes the program manager's testimony regarding the electronic-onboarding process, it concludes that the employees' "simple denials" constitute no evidence and must be disregarded. *Ante* at ___.

This Court, of course, has no constitutional or other authority to weigh conflicting evidence. *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007) (explaining that only "the fact-finder [is] imbued with 'constitutional authority to weigh conflicting evidence'" (quoting *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 913–14 (Tex. 2004) (Jefferson, C.J., dissenting))). When conducting a factual-sufficiency review, courts of appeals may engage in a limited form of evidence-weighing, *see Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625, 627 (Tex. 2004), but "this Court does not have jurisdiction to conduct a factual sufficiency review," *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Instead, we may only conduct a legal-sufficiency review, in which we "must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and

disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

When we are conducting a legal-sufficiency review, some limited circumstances may require us to consider evidence that contradicts the trial court's factual finding. First, for example, if evidence that contradicts a finding demonstrates that the evidence supporting the finding is "incompetent," we must consider that contrary evidence. *Id.* at 812–13. This exception applies when the supporting evidence merely expresses an opinion or legal conclusion that the contrary evidence conclusively demonstrates is "impossible." *Id.* (citing examples of contrary evidence negating eyewitness's opinion regarding distances, employee's opinion regarding course and scope of employment, and expert's and lay witnesses' opinions regarding expert-witness topics). Second, we cannot "disregard undisputed evidence that allows of only one logical inference." *Id.* at 814. This exception applies most often when the contrary evidence demonstrates "physical facts that cannot be denied," so that "reasonable people could not differ in their conclusions." *Id.* at 815–16.

Like *Ward v. Weaver*, this case may approach those limited circumstances, but it does not get there. First, the employees' declarations here do not express mere estimations or opinions. Instead, they directly and clearly state as factual matters that the employees never saw, received, heard about, or signed an arbitration agreement when they completed Aerotek's electronic-onboarding process. Second, as convincing as Aerotek's evidence is, it does not establish that the employees' assertions are truly impossible. Aerotek's program manager (who admitted that she is not an "IT expert") acknowledged that Aerotek did not design or create the electronic-onboarding

6

application but instead purchased it from an outside vendor and then "attach[ed]" it to Aerotek's system. No one testified on behalf of the vendor who actually created the application.

Third, and most importantly, the physical and technological "impossibility" that Aerotek's evidence purports to establish depends *entirely* on the veracity of its program manager's testimony describing the electronic-onboarding application. The Court accepts as true, for example, not only the program manager's description of how the application works, but also her testimony that

> (1) she "helped develop" the application and "managed" its use,
> (2) Aerotek has "exclusively" used that application,
> (3) Aerotek's hiring process has not changed since the employees used it,
> (4) the application has never suffered glitches that could permit an employee to complete it without signing every document,
> (5) the process is "locked throughout," and
> (6) once the program records the employees' information, Aerotek has no ability to change it.

*Ante* at ___.

This testimony is not the type of undeniable physical evidence that renders facts indisputable, and yet the impossibility that Aerotek asserts wholly depends on its veracity. By denying that they ever saw, received, heard about, or signed the arbitration agreement, the employees directly contradicted the program manager's assertions. I do not suggest that her assertions were untrue, any more than I suggest that the employees' declarations were untrue. Both the program manager and the employees were interested witnesses, and only the trial court could make the credibility determinations necessary to resolve their conflicting testimony. *See N. E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 255 n.50 (Tex. 2020) ("Under any standard of review, the fact-finder is the sole judge of the credibility of witnesses and the weight to give their testimony." (citing *Keller*, 168 S.W.3d at 819)).

7

Although I share the Court's interest in promoting the "utility of digital contracts," *ante* at ___, I don't agree that we should sacrifice our well-established evidentiary and appellate-review standards to promote it. The technological advancements that have made it easier for parties to enter into a contract have also made it easier for parties to manufacture false evidence that they have done so.[5] While the Texas Uniform Electronic Transactions Act addresses the *type* of evidence on which a party can rely to establish the existence and validity of an electronically executed contract, *see* TEX. BUS. & COM. CODE § 322.009(a), it does not address the competency or effect of that evidence when confronted with contrary evidence. The Act provides that evidence of the "efficacy of any security procedure" can establish that an "electronic signature is attributable to a person," but it also provides that the "*effect*" of that evidence must be "determined from the context and surrounding circumstances . . . *and otherwise as provided by law*." *Id.* § 322.009(b) (emphases added).

In other words, the Act makes evidence of the "efficacy of security procedures" *sufficient* to establish the validity of an electronic signature, but it does not make that evidence *conclusive* in the face of contrary evidence. It does not alter the standards governing the legal sufficiency of contrary evidence or this Court's role in reviewing that sufficiency. To the contrary, the Act expressly and repeatedly provides that a "transaction subject to this chapter is also subject to other applicable substantive law," *id.* § 322.003(d), that "[w]hether an . . . electronic signature has legal

---

[5] *See, e.g.*, Nina I. Brown, *Deepfakes and the Weaponization of Disinformation*, 23 VA. J.L. & TECH. 1, 8 (2020) (describing problems resulting from "deepfake" technology and proposing that, "[t]o be successful, any solution must balance these disparate factors and account for the fact that the technology—and likely the way it is used—will continue to evolve"); Michael Finnegann, *Hollywood Actor Arrested in Alleged $227-million Ponzi Scheme*, L.A. TIMES (Apr. 6, 2021), https://www.latimes.com/california/story/2021-04-06/hollywood-actor-zach-avery-ponzi-scheme-arrest (describing allegations that actor defrauded investors by manufacturing fictitious licensing contracts and emails with HBO, Netflix, and other platforms).

consequences is determined by this chapter and other applicable law," *id.* § 322.005(e), and that the Act "must be construed and applied . . . to facilitate electronic transactions consistent with other applicable law," *id.* § 322.006(1). The Act does not make evidence of an electronic signature irrebuttable, but instead subjects that evidence to the applicable legal standards that govern the effect of evidence as in all other cases. In light of the risks that inevitably accompany the rewards of ever-advancing technology, I would not relax those standards in this case or any other.

Under our well-established rules, the employees' sworn denials constitute legally sufficient evidence to create a fact issue and support the trial court's implied finding that the employees did not execute the arbitration agreements. *See Ward*, 34 S.W.2d at 1095. Regardless of whether we agree with that implied finding, our standard of review requires that we accept it.

The times will always be a-changin', but sometimes, the more things change, the more they stay the same. Or, at least, they should. I would affirm the court of appeals' judgment, which properly adheres to our appellate standard of review and defers to the trial court's finding based on legally sufficient evidence. Because the Court does not, I respectfully dissent.

 

 

_____
Jeffrey S. Boyd
Justice

Opinion delivered: June 28, 2021

9